A. G. ALCHIAN, APPELLANT, RESPONDENT, v. ERNEST E. FADLER, ET AL., RESPONDENT, APPELLANT.—212 S. W. 2d 78.

Kansas City Court of Appeals.   Opinion delivered May 24, 1948.

*Newbill & Brannock, Tyree G. Newbill* and *W. Arnold Brannock* for appellant.

*Warren S. Earhart* and *Jeter & Earhart* for appellant.

612

*Sam Mandell* for respondent.

DEW, J.—A. G. Alchian, as plaintiff below, brought suit against Ernest E. Fadler and F. L. Kenworthy, doing business as Ernest E. Fadler Company, in two counts, in each of which he sought to recover on a check issued by the defendants for $3006.90, both checks being of the same date, payable to the same payee and endorsed by the same endorsers, and both of which plaintiff claimed as owner and holder in due course. The court, sitting as a jury found for the defendants on both counts of plaintiff's petition. The cause was tried upon an agreed statement of the facts.

For clarity we shall refer to the above parties hereinafter as plaintiff and defendants, respectively, which capacities they occupied below.

The substance of each count of the plaintiff's petition is that defendants issued a check January 11, 1946, drawn payable to the order of L. B. Silver on the Produce Exchange Bank of Kansas City, Missouri, which directed said bank to pay to the order of L. B. Silver the sum of $3006.90; that said check was thereafter endorsed by L. B. Silver and delivered to one S. Elder; that on January 15, 1946, said Elder endorsed and delivered said check to plaintiff and thereupon in the regular course of business plaintiff became and is the bona fide purchaser, owner and holder of said check for valuable consideration without notice of any defects; that before the plaintiff could, with

reasonable diligence, present said check for payment at said bank, de-, fendants stopped payment thereon, and on January 17, 1946, he presented the same to said bank for payment and payment was refused, and no part of the same has been paid.

Defendants' amended answer admits the execution of the checks and the stoppage of payment thereon, and generally denies the remaining allegations of each count. They further plead that they executed said checks to the order of L. B. Silver for the purpose of transmitting said checks to him at Fresno, California, for deposit there in a bank and payment by him of the proceeds thereof to one S. L. Hogopian at Fresno, California, for two carloads of grapes purchased by Silver for defendants for the amount of said checks; that said checks were sent to Silver by air mail to Fresno, California, where he received them on January 12, 1946, in time to deposit same for collection on that date; that Silver, although knowing the purpose of said checks, did not deposit the same but became engaged in a gambling game known as "craps" in Fresno, with one S. Elder on January 14, 1946, in the afternoon and evening of that date, and after banking hours in said city, and during the course of said game endorsed and delivered said checks to Elder for cash to be used, and which was used and lost by Silver in said gambling game. Defendants further aver that the game described was illegal under the sections cited of the California statutes, and that transfer of the checks from Silver to Elder as set forth, was illegal thereunder and conveyed no title to Elder, and that Elder conveyed no enforceable title in and to the same by transferring them to the plaintiff. Defendants deny that plaintiff is the holder for value, but is attempting to collect said checks as agent for Elder. Defendants further allege that said game was illegal and transfer of said checks was void and unenforceable under the laws of Missouri; that Elder was holder *mala fide* and the transfer by him was void and unenforceable. Defendants allege that when notified by Silver of his improper use of said checks they stopped payment on same on January 15, 1946; that on January 16, 1946, they transmitted $3500 to Silver at Fresno, California, for the payment of said grapes, and by agreement with Silver he added $2513.80 of his own money to pay for same: that by reason of Silver's paying said sum out of his own funds, defendants are now indebted to Silver in that amount. Defendants plead further that plaintiff acquired said checks after they were past due and no longer negotiable instruments before maturity, and the same in plaintiff's hands are subject to defenses which the defendants have against the payee Silver, who would not be entitled to recover payment by reason of the fact that he did not use the checks for the express purpose for which they were furnished to him.

The case was tried on the following Stipulation of Facts:

"1. January 11, 1946, Ernest E. Fadler Company, a co-partnership composed of Ernest E. Fadler and Frank L. Kenworthy, the defendants, issued their checks No. 14917 and 14919, in Kansas City, Missouri which are attached to the petition as Exhibits A and B and shall be considered in evidence, drawn on the Produce Exchange Bank of Kansas City, Missouri in the sum of $3006.90 each, payable to the order of L. B. Silver, for the purpose of transmitting said checks to said Silver at Fresno, California for deposit in a bank there by Silver and the payment by him of the proceeds to one S. L. Hogopian in Fresno, California for two carloads of grapes shipped in cars numbered ·SFRD 22521 and SFRD 22157 purchased by said Silver for said Ernest E. Fadler Company from said Hogopian for the amounts of such checks. Said Silver acted as a licensed broker under the Perishable Agricultural Commodities Act, 7 U. S. C. A. 499 et seq. in the transaction. Ernest E. Fadler Company sent such checks to L. B. Silver by air mail to Fresno, California where he received them the morning of January 12, 1946, knowing the purpose for which the said checks had been sent to him, in time to deposit them in a bank there for collection that date in the usual course of banking business.

"2. Silver did not deposit said checks in a bank nor did he pay the proceeds thereof to Hogopian. Instead, he cashed said checks and used the proceeds to play in a dice game known as 'craps'. On the 14th day of January, 1946, after banking hours in Fresno, California that day, the checks were cashed for Silver by S. Elder, who was one of several persons with whom the dice game was being played, and said checks were cashed as the game proceeded. Silver endorsed the checks and delivered them to Elder at the time Elder cashed them. Silver lost the cash received for the checks in the game. The game of 'craps' is illegal under the laws of the state of California and of Missouri. Embezzlement by a bailee is illegal and a crime under the laws of the state of California.

"3. On January 15, 1946 said Elder endorsed and delivered said checks to A. G. Alchian, the plaintiff in this case, in Fresno, California, for cash in amount of such checks. At the time said Alchian cashed said checks for Elder, Alchian did not know how Elder acquired said checks nor did Alchian know of the gambling game. On January 15, 1946 Alchian deposited the checks for collection in a bank in Fresno, California for transmittal to the Produce Exchange Bank in Kansas City, Missouri for collection through the usual channels for collecting checks, whereby the checks were presented to the Produce Exchange Bank on January 17, 1946·which refused payment.

"4. Ernest E. Fadler Company, upon being notified by Silver what had happened to the checks on January 15, 1946, stopped payment thereon by order to the Produce Exchange Bank.

"5. Ernest E. Fadler Company by its check No. 14993 in the sum of $3500.00 executed January 16, 1946 transmitted that amount to L. B. Silver for the payment for said cars of grapes and said Silver by agreement with Ernest E. Fadler Company added $2513.80 of his own funds and paid said Hogopian for the grapes.

"6. A. G. Alchian brought suit in this court in this action against Ernest E. Fadler Company for the amount of such checks with interest from the date payment was refused, January 17, 1946, and no part of said checks were paid to Alchian, the plaintiff, by defendants or any other person."

On June 17, 1947, the court rendered its judgment against the plaintiff on both counts. The plaintiff filed a notice of appeal to this court, and thereafter the defendants appealed from an order of the court overruling their motion to set aside the court's order and re-entry of the judgment on September 16, 1947, because of matters patent of record. Both appeals, by agreement of counsel, have been merged and are before us for disposition in this opinion.

Defendants in their briefs here, among other points, contend that the plaintiff's appeal should be dismissed because it appears on the face of the record that the notice of appeal was filed after the time for filing had expired. This court has, heretofore, during the March, 1947, Term, on motion to dismiss the appeal, held the notice of appeal timely.

Defendants, in support of their appeal from the order of the trial court overruling their motion to set aside the orders and re-entry of judgment made by the court on September 16, 1947, argue that the court did not have jurisdiction to make the same on that date. Such entries were unauthorized. But whether or not the court again erred in not setting aside the entry of the latter date, its failure to do so would not affect the existence of the judgment of June 17, 1947, from which we have ruled that a timely notice of appeal was filed.

Plaintiff contends that under the agreed facts he was the holder in due course of the checks in question; that he acquired them for value without notice of infirmities; that his status as such is not affected by the fact that his endorser, S. Elder, was not a holder in due course; that defendants ratified Silver's negotiation of the checks, and are estopped from claiming the benefits of any illegality in the transaction. Defendants argue that the plaintiff is not a holder in due course; is subject to all the defenses the maker has against the payee; that plaintiff obtained the checks as assignee of one who acquired the same in aid of a gambling game and, therefore, payment is unenforceable in plaintiff's hands. Although plaintiff takes the position that the

California law applies to the issues, both parties cite California and Missouri authorities. Both states have adopted the Uniform Negotiable Instruments Law.

We are of the opinion that the defendants are not estopped on the ground of ratification to deny the legality of the transaction by which the plaintiff acquired the checks, pending the determination of their liability thereon. It is true that the defendants thereafter sent $3500 additional funds to Silver to which, by agreement with Silver, the latter added $2513 of his own money and paid for the two carloads of grapes and thus, to date, the defendants have received the same with an outlay of $3500 instead of $6013.80, but if the defendants are held liable to plaintiff on the checks they will be out a total of $9,513.80, and if they are not held liable to plaintiff, they may, as far as the record shows, be indebted to Silver for the said amount supplied by him. We believe this conduct on the part of the defendants after stoppage of payment was not only reasonable, but a provident and precautionary arrangement under the conditions.

The checks were negotiable instruments. Deering Civil Code of California, 1941, Sec. 3082; Secs. 3017, 3200, R. S. Mo., 1939. If it can be said that the plaintiff became holder of the checks before the same were overdue, and that the negotiation of the same was not an unreasonable time after date of issue, then the plaintiff was and is a holder in due course, under the agreed facts. Secs. 3133, 3134, Civil Code of California, 1941; Secs. 3067, 3068, R. S. Mo., 1939. The checks were issued in Kansas City, Missouri on Friday, January 11, 1946, and sent by the makers to the payee in Fresno, California, where he received them on Saturday, January 12. The next day was Sunday, January 13. On Monday, the 14th, in the afternoon or evening, the payee endorsed and delivered the checks to Elder with whom he was then engaged in a dice game, an illegal transaction. The proceeds were lost by Silver in the game. The next day, Tuesday, January 15, 1946, the plaintiff, in Fresno, California, paid to Elder the amount of the checks upon the endorsement and delivery by the latter, four days after the same had been issued and mailed by the makers in Kansas City, Missouri, and on the same day the plaintiff deposited the checks for clearance in his bank in Fresno. It is agreed that plaintiff "did not know how Elder acquired said checks, nor did Alchian know of the gambling game". Under these undisputed facts we hold that the plaintiff acquired the checks for value before they were past due, and without notice of infirmities; that the same were negotiated by him within reasonable time after their issuance, and that he was and is the holder thereof in due course. The checks therefore in his hands were not subject to the defenses here made and he was entitled to judgment thereon.

Although holding that the checks were negotiable instruments and not over due, and that the plaintiff was a bona fide holder in due course of the negotiable instruments, the trial court held that the pay-

ment of the same is unenforceable by the plaintiff "as an assignee of holder *mala fide*". The authority cited by the trial court, Webb v. Dillard, 198 S. W. 2d 235, is not applicable for the reason that in that case, while the plaintiff therein was deprived of the right to recover on checks cashed by him for another who used the proceeds in a poker game, there was direct and substantial evidence therein that plaintiff himself was a participant in the gambling transaction. In the case at bar, under the agreed facts, the plaintiff was wholly ignorant of the manner in which his endorser acquired the checks and had no knowledge whatever of the previous gambling transaction between his endorser and the payee.

The motion to dismiss plaintiff's appeal is overruled. The order of the trial court of September 24, 1947, overruling defendants' motion to set aside the order and re-entry of judgment of September 16, 1947, is reversed; and the judgment of June 17, 1947, is reversed, and the cause is remanded with directions that the court set aside its order and re-entry of judgment of September 16, 1947, and to enter judgment for the plaintiff on each of Counts 1 and 2 of his petition for $3006.90, respectively, with interest at 6 per cent per annum from January 17, 1946, the date said checks were presented for payment by the plaintiff, and for costs. All concur.

UPON MOTION FOR REHEARING AND TO TRANSFER TO SUPREME COURT.

DEW, J.—The defendants have cited us no statute of California making the transfer of the checks void, and we have not been able to find any. If there is none, our Section 3394, R. S. Mo., 1939, would not apply under the agreed facts. Even if Missouri law did apply, the agreed facts do not come within the purview of our said statute. The defendants' motions for rehearing and transfer to Supreme Court are overruled. All concur.